IN THE COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | |
|---|---|
| **CHRISTOPHER TALBOT-JONES**<br>5189 Dana Harvey Lane<br>Independence, KY 41051<br><br>*individually and on behalf of all others similarly situated,*<br><br>**Plaintiff,**<br><br>v.<br><br>**CINFED FEDERAL CREDIT UNION**<br>4801 Kennedy Avenue<br>Cincinnati, OH 45209<br><br>**Defendant.** | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED**<br><br><br>**PUTATIVE CLASS ACTION** |

## CLASS ACTION COMPLAINT

Plaintiff Christopher Talbot-Jones, individually and on behalf of all others similarly situated, brings this action against Defendant Cinfed Federal Credit Union ("Cinfed" or "Defendant"), a community chartered federal credit union, to obtain damages, restitution, and injunctive relief for the Class, as defined below, from Defendant. Plaintiff makes the following allegations upon information and belief, except as to his own actions, the investigation of his counsel, and the facts that are a matter of public record.

## NATURE OF THE ACTION

1.      This class action arises out of the recent targeted cyberattack and data breach (the "Data Breach") on Cinfed's network that resulted in unauthorized access to the sensitive data of its employees and customers. As a result of the Data Breach, Plaintiff and approximately 57,959[1]

---

[1]      *Data Breach Notifications*, Office of the Maine Att'y Gen., https://apps.web.maine.gov/online/aeviewer/ME/40/5148ba99-c8e9-42cc-bf51-400f9f032c68.shtml (last visited Nov. 21, 2023).

1

other individuals ("Class Members") suffered ascertainable losses in the form of invasion of privacy, the loss of the benefit of their bargain, out-of-pocket expenses, and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

2.      Information compromised in the Data Breach includes Cinfed's clients' names, Social Security numbers, and financial account numbers.[2]

3.      Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' Private Information, and for failing to provide timely and adequate notice to Plaintiff and Class Members that their information had been subject to unauthorized access, acquisition, and publication by an unknown third party, or specifying exactly what specific type of information was accessed.

4.      Upon information and belief, Defendant maintained the Private Information in a reckless manner. In particular, the Private Information was maintained on Defendant's computer system and network in a condition vulnerable to cyberattacks.

5.      Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known risk to Defendant, and thus Defendant was on notice that failing to take steps necessary to secure the Private Information from those risks left that property in a dangerous condition.

6.      Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent, reckless, and intentional conduct since the Private Information that Cinfed collected and maintained is now in the hands of data thieves who have already disseminated the information to additional third parties.

---

[2] The information compromised in the Data Breach shall be collectively referred to as "Private Information."

2

7.     Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

8.     As a result of the Data Breach, Plaintiff and Class Members have suffered actual injury to their privacy.

9.     Plaintiff and Class Members have also been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft and fraud.

10.    Plaintiff and Class Members may also incur out of pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, trips to the bank, or other protective measures to deter and detect identity theft.

11.    Plaintiff seeks remedies including, but not limited to, compensatory damages, punitive damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring services funded by Defendant.

12.    Accordingly, Plaintiff bring this action against Defendant seeking redress for its unlawful conduct, and asserting claims for: (i) negligence, (ii) negligence *per se*, (iii) breach of fiduciary duty, (iv) invasion of privacy, (v) breach of implied contract, and (vi) unjust enrichment.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this action pursuant to R.C. § 2305.01, as the amount in controversy in this case exceeds $15,000. This Court has personal

3

jurisdiction over Defendant Cinfed because Defendant transacts business, contracts to supply services, and caused tortious injury by act or omission within the State of Ohio. In addition, Defendant conducts a majority of its business in the State of Ohio, thus rendering the exercise of personal jurisdiction by this Court necessary and proper.

14.     Venue is proper in Hamilton County, Ohio under Ohio Rules of Civil Procedure Rule 3(C)(2) and 3(C)(3) because Defendant has its principal place of business and conducted the activities that gave rise to this claim in this county.

## PARTIES

15.     Plaintiff Christopher Talbot-Jones voluntarily conducted business with Cinfed and remains a customer as of the date of this Complaint.

16.     Defendant Cinfed Federal Credit Union is a community chartered federal credit union with its principal place of business in Hamilton County, Ohio, that provides banking services to residents of seventeen (17) counties across Ohio, Kentucky, and Indiana.

## BACKGROUND

17.     As a condition of employment and/or receiving banking services, Cinfed requires Class Members entrust it with highly sensitive personal information.

18.     Upon information and belief, in the ordinary course of providing medical, addiction, and social services, Cinfed requires employees and customers to provide sensitive personal and private information such as: name, address, phone number and email address; date of birth; demographic information; State ID or drivers' license; and Social Security number.

19.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private

4

Information from unauthorized disclosure.

20.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

21.     Plaintiff and Class Members relied on Defendant to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

22.     Defendant recognizes its obligation to protect the Private Information in its custody, stating that "[t]o protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. We select businesses that offer products to enhance your economic well-being. We do not sell to telemarketers."[3]

23.     Upon information and belief, Defendant provides (and is required by law to provide) a copy of its Notice of Privacy Practices to its patients.

24.     Because of the highly sensitive and personal nature of the information it acquires and stores with respect to its employees and customers, Defendant promises to (among other things): 1) make sure that financial and other information that identifies customers is kept private; 2) give customers notice of Defendant's legal duties and privacy practices with respect to their Private Information; 3) follow the terms of the  Privacy Policy; 4) notify customers of any breaches of unsecured Private Information that may occur; and 5) adequately safeguard the Private Information of employees and customers that it requires them to provide.

**THE DATA BREACH**

---

[3] https://cdn.userway.org/remediations/pdf/291/e58707c4798a34ce.pdf (last visited Nov. 21, 2023).

5

25.     In or around October 2023, Cinfed became aware of a cybersecurity incident, which resulted in the Data Breach that exposed the Private Information of its customers and employees.[4]

26.     On or around October 23, 2023, Cinfed determined that the information exposed in the Data Breach included employees and customers' names, Social Security numbers, and financial account numbers.[5]

27.     Defendant did not begin notifying victims of the Data Breach until November 9, 2023.

28.     The notices received by Plaintiff and Class Members are vague and inadequate. For example, the notices fail to identify the specific information and records compromised, when the breach occurred, how the breach occurred, how many people were affected, whether the information was encrypted, or the fact that their Private Information had already been publicly listed for sale on the internet and/or disseminated to third parties.

29.     Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

30.     Defendant's data security obligations were particularly important given the sensitivity of the Private Information it maintained and substantial increase in cyberattacks and/or data breaches in the banking and financial industry preceding the date of the breach.

31.     As outlined herein, Plaintiff and the Class Members lost the benefit of the bargain they made with Defendant, suffered an injury to their privacy, and now face an increased risk of

---

[4]     *Data Breach Notifications*, Office of the Maine Att'y Gen., https://apps.web.maine.gov/online/aeviewer/ME/40/5148ba99-c8e9-42cc-bf51-400f9f032c68.shtml (last visited Nov. 21, 2023).
[5] *Id.*

6

fraud and identity theft.

32.     Additionally, Plaintiffs' and Class Members' injuries include out of pocket costs, emotional distress, mental anguish, mental stress, anxiety, fright, humiliation, embarrassment, nervousness, aggravation, inconvenience, and lost time.

### The Data Breach was Foreseeable

33.     As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[6]

34.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the service industry preceding the date of the breach.

35.     In 2018, there were 1,257 publicly reported data breaches in the United States and 1,473 in 2019.[7] In 2021, there were 1,862 data breaches in the United States alone.[8]

36.     In light of the ever-increasing trend of cybersecurity incidents affecting all industries, Defendant knew or should have known that its customers' financial electronic records would be targeted by cybercriminals.

37.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

---

[6] *See* How to Protect Your Networks from RANSOMWARE, at 3, *available at* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last accessed Mar. 25, 2023).

[7] Abi Tunggal, 116 Must-Know Data Breach Statistics for 2023, UpGuard.com, https://www.upguard.com/blog/data-breach-statistics (last vistied Apr. 20, 2023).

[8] Ani Petrosyan, *Annual Number of Data Compromises and Individuals Impacted in the United States from 2005 to 2022*, Statista.com, https://www.statista.com/statistics/273550/data-breaches-recorded-in-the-united-states-by-number-of-breaches-and-records-exposed/#:~:text=In%202022%2C%20the%20number%20of,have%20one%20thing%20in%20common. (last visited Apr. 20, 2023).

7

*Value of Private Information*

38.     The Private Information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[9] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[10] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[11]

39.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts.

40.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information…[is] worth more than 10x on the black market."[12]

41.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class Members and the foreseeable consequences that would occur if Defendant's data security system was breached,

---

[9] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed Mar. 25, 2023).

[10] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed Mar. 25, 2023).

[11] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed Mar. 25, 2023).

[12] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Mar. 25, 2023).

8

including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

42.     Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

43.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

44.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class Members.

45.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure.

46.     Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

47.     Plaintiff and the Class Members relied on Defendant to implement and follow adequate data security policies and protocols, to keep their Private Information confidential and securely maintained, to use such Private Information solely for business purposes, and to prevent the unauthorized disclosures of the Private Information.

***Defendant Failed to Properly Protect Plaintiff and Class Members' Private Information***

48.     Defendant could have prevented this Data Breach by properly monitoring, securing

9

and encrypting the systems containing the Private Information of Plaintiff and Class Members. Alternatively, Defendant could have destroyed the data, especially for individuals with whom it had not had a relationship for a period of time.

49.    Defendant's negligence in safeguarding the Private Information of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to companies like Defendant to protect and secure sensitive data they possess.

50.    Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

51.    To prevent and detect unauthorized cyber-attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.
- Configure firewalls to block access to known malicious IP addresses.
- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.
- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.
- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.
- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

10

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[13]

52.     Given that Defendant was storing the PII of Plaintiff and Class Members, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks. Instead, Defendant failed to implement basic security measures, like password protection, encryption, or multifactor authentication.

### Defendant Failed to Comply with FTC Guidelines

53.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

50.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer

---

[13]     *How to Protect Your Networks From Ransomware*, Justice.gov, https://www.justice.gov/criminal-ccips/file/872771/download (last visited Nov. 21, 2023).

11

networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[14] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[15]

51.     The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

52.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

53.     Defendant failed to properly implement basic data security practices.

54.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

55.     Defendant was at all times fully aware of its obligation to protect the PII and PHI

---

[14] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016), available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited Nov. 21, 2023).
[15] *Id.*

12

of their customers. Defendant was also aware of the significant repercussions that would result from its failure to do so.

*Defendant Failed to Comply with Industry Standards*

56.     Several best practices have been identified that a minimum should be implemented by service providers like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data, and; limiting which employees can access sensitive data.

57.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

58.     These foregoing frameworks are existing and applicable industry standards in the financial industry, and Defendant failed to comply with these accepted standards, thereby opening the door to the cyber incident and causing the data breach.

**DEFENDANT'S BREACH**

59. Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it knowingly failed to properly maintain and safeguard its computer systems and data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

13

a.  Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b.  Failing to adequately protect customers' Private Information;

c.  Failing to properly monitor its own data security systems for existing intrusions;

d.  Failing to ensure that its vendors with access to its computer systems and data employed reasonable security procedures;

e.  Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act, and;

f.  Failing to comply with the Ohio Consumer Sales Practices Act, R.C. 1345.01 *et seq.*

g.  Failing to adhere to industry standards for cybersecurity.

60.  Defendant unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access Cinfed's computer network and systems which contained unsecured and unencrypted Private Information.

### Cyberattacks and Data Breaches Cause Disruption and Put Consumers at an Increased Risk of Fraud and Identity Theft

76.  Cyberattacks and data breaches at financial institutions like Defendant are especially problematic because they can negatively impact the overall daily lives of individuals affected by the attack.

77.  The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face

14

"substantial costs and time to repair the damage to their good name and credit record."[16]

78.     That is because any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals steal personally identifiable information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims, take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

79.     The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[17]

---

[16] *See* U.S. Gov. Accounting Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (2007). Available at https://www.gao.gov/new.items/d07737.pdf.
[17] *See IdentityTheft.gov*, Federal Trade Commission, https://www.identitytheft.gov/Steps (last visited May 23, 2021).

15

80.    Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

81.    Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

82.    A study by Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of personal and financial information:[18]



---

[18] *See* Jason Steele, *Credit Card and ID Theft Statistics*, CreditCards.com (Oct. 23, 2020) https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276.php. (last visited May 27, 2021).

83. Moreover, theft of Private Information is also gravely serious. Private Information is an extremely valuable property right.[19]

84. Its value is axiomatic, considering the value of "big data" in corporate America and the fact that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

85. It must also be noted there may be a substantial time lag – measured in years -- between when harm occurs and when it is discovered, and also between when Private Information and/or financial information is stolen and when it is used.

86. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO Report, at p. 29.

87. Private Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

88. There is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

---

[19] *See, e.g.*, John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

89. Thus, Plaintiff and Class Members must vigilantly monitor their financial and medical accounts for many years to come.

90. Private Information is particularly valuable because criminals can use it to target victims with frauds and scams. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

91. For example, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines.[20] Such fraud may go undetected until debt collection calls commence months, or even years, later. Stolen Social Security Numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.[21] Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security Number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

92. Moreover, it is not an easy task to change or cancel a stolen Social Security number.

93. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[22]

---

[20] *Identity Theft and Your Social Security Number*, Social Security Administration (2018) at 1. Available at https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited May 23, 2021).
[21] *Id* at 4.
[22] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft.

94.     This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[23]

95.     For this reason, Defendant knew or should have known about these dangers and strengthened its data and email handling systems accordingly. Defendant was put on notice of the substantial and foreseeable risk of harm from a data breach, yet Cinfed failed to properly prepare for that risk.

### *Plaintiff Christopher Talbot-Jones's Experience*

96.     Plaintiff Talbot-Jones was required to provide and did provide his Private Information to Defendant during the course of his business with Defendant. The Private Information included his name, Social Security number, and other financial information.

97.     The notice letter Plaintiff received states that his full name, Social Security Number, and financial account number were compromised in the breach.

98.     Plaintiff's Private Information was compromised as a direct and proximate result of the Data Breach.

99.     To date, Cinfed has done next to nothing to adequately protect Plaintiff and Class Members' Private Information, when the facts demonstrate that the Private Information was targeted, accessed, and exfiltrated in a criminal cyberattack. The fraud and identity monitoring services offered by Defendant are only for twelve months, and places the burden squarely on Plaintiff and Class Members by requiring them to expend time signing up for the service and

---

[23] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, Computer World (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

addressing time sensitive issues.

100. Defendant has merely offered Plaintiff and Class Members fraud and identity monitoring services for up to twelve (12) months, but this does nothing to compensate them for damages incurred and time spent dealing with the Data Breach. Nor does it do anything to monitor, prevent, or compensate for fraud and identity theft that occurs after the twelve-month period.

101. Plaintiff typically takes measures to protect his Private Information and is very careful about sharing his Private Information. Plaintiff has never knowingly transmitted unencrypted Private Information over the internet or other unsecured source.

102. Plaintiff stores documents containing his Private Information in a safe and secure location, and diligently chooses unique usernames and passwords for his online accounts.

103. As a result of the Data Breach, Plaintiff has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach. He monitors his accounts and credit scores and has sustained emotional distress. This is time that was lost and unproductive and took away from other activities and duties.

### *Plaintiff's and Class Members' Damages*

104. Plaintiff and Class Members have been damaged and injured by the compromise of their Private Information in the Data Breach.

105. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at a present, imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

106. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach.

107.     Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

108.     Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

109.     Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

110.     Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

111.     Plaintiff and Class Members were also damaged via benefit-of-the-bargain damages. Plaintiff and Class Members overpaid for a service that was intended to be accompanied by adequate data security but was not. Part of the price Plaintiff and Class Members paid to Defendant was intended to be used by Defendant to fund adequate security of Cinfed's computer property and Plaintiff's and Class Members' Private Information. Thus, Plaintiff and the Class Members did not get what they paid for and agreed to.

112.     Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their medical accounts and sensitive information for misuse.

113.     Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket

21

expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

   a.   Reviewing and monitoring sensitive accounts;

   b.   Purchasing credit monitoring and identity theft prevention;

   c.   Placing "freezes" and "alerts" with reporting agencies;

   d.   Spending time on the phone with or at financial institutions, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

   e.   Contacting financial institutions and closing or modifying financial accounts; and,

   f.   Closely reviewing and monitoring Social Security Number, bank accounts, and credit reports for unauthorized activity for years to come.

114.   Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing Private Information is not accessible online and that access to such data is password protected.

115.   As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered emotional distress, mental anguish, mental stress, anxiety, fright, nervousness, aggravation, anger, inconvenience, lost value of time, loss of privacy, and are at an increased risk of future harm.

## **CLASS ACTION ALLEGATIONS**

116.   Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated ("the Class").

22

117.    Plaintiff proposes the following Class and Subclass definitions, subject to amendment as appropriate:

> All persons Cinfed identified as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach (the "Class").

118.    Excluded from the Class are Defendant's officers and directors; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

119.    Plaintiff reserves the right to amend or modify the Class definition as this case progresses.

120.    <u>Numerosity</u>. The Members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class consists of approximately 57,959 individuals.

121.    <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.    Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information;

b.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.    Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

23

d.      Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e.      Whether Defendant owed a duty to Class Members to safeguard their Private Information;

f.      Whether Defendant breached its duty to Class Members to safeguard their Private Information;

g.      Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

h.      Whether Defendant should have discovered the Data Breach sooner;

i.      Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

j.      Whether Defendant's conduct was negligent;

k.      Whether Defendant's actions, inactions, and practices complained of herein amount to acts of intrusion upon seclusion under the law;

l.      Whether Defendant violated the consumer protection statute invoked below;

m.      Whether Defendant breach implied or express contracts with Plaintiff and Class Members;

n.      Whether Defendant was unjustly enriched by unlawfully retaining a benefit conferred upon them by Plaintiff and Class Members;

o.      Whether Defendant failed to provide notice of the Data Breach in a timely manner, and;

24

p.      Whether Plaintiff and Class Members are entitled to damages, civil

penalties, punitive damages, treble damages, and/or injunctive relief.

122.    <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's information, like that of every other Class Member, was compromised in the Data Breach.

123.    <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel are competent and experienced in litigating Class actions.

124.    <u>Predominance</u>. Defendant have engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same computer system and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

125.    <u>Superiority</u>. A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management

25

difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

126.    Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

## CAUSES OF ACTION

### FIRST COUNT
**Negligence**
**(On Behalf of Plaintiff and the Class)**

127.    Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

128.    Defendant required customers and employees, including Plaintiff and Class Members, to submit non-public Private Information in the ordinary course of providing services and/or employment.

129.    By collecting and storing this data in its computer property, and sharing it and using it for financial gain, Defendant owed a duty of care to use reasonable means to secure and safeguard its computer property—and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which they could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

130.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

26

131.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its customers, which is recognized by laws and regulations including but not limited to the FTCA, the Ohio Consumer Sales Practices Act ("CSPA"), and common law. Defendant was in a superior position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

132.    In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the FTCA, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

133.    Similarly, Defendant had a duty to employ reasonable security measures under the CSPA, R.C. 1345.01, *et seq.*, which prohibits "unfair or deceptive acts or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.02(A). In construing the CSPA, "court[s] shall give due consideration and great weight to federal trade commission orders, trade regulation rules and guides, and the federal courts' interpretations of subsection 45 (a)(1) of the "Federal Trade Commission Act," 38 Stat. 717 (1914), 15 U.S.C.A. 41, as amended." R.C. 1345.02(C).

134.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

135.    Furthermore, by requiring customers and employees to provide their Private Information, Defendant assumed a legal duty to exercise reasonable care in handling and/or storing that Private Information.

136. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

    a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

    b.    Failing to adequately monitor the security of their networks and systems;

    c.    Failing to ensure that their email system had plans in place to maintain reasonable data security safeguards;

    d.    Failing to have in place mitigation policies and procedures;

    e.    Allowing unauthorized access to Class Members' Private Information;

    f.    Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

    g.    Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

137. It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Furthermore the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the financial industry.

138. It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

139. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

28

140. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.,* (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

## SECOND COUNT
### Negligence *Per Se*
### (On Behalf of Plaintiff and the Class)

141. Plaintiff repeats and re-alleges each and every allegation contained the Complaint as if fully set forth herein.

142. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant's, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

143. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored, and the foreseeable consequences of the Data Breach for companies of Defendant's magnitude, including, specifically, the immense damages that would result to Plaintiff and Members of the Class due to the valuable nature of the Private Information at issue in this case—including Social Security numbers.

144. Defendant's violations of Section 5 of the FTC Act constitute negligence *per se*.

145. Plaintiff and members of the Class are within the class of persons that the FTC Act was intended to protect.

29

146.     Similarly, Defendant had a duty to employ reasonable security measures under the CSPA, R.C. 1345.01, *et seq.*, which prohibits "unfair or deceptive acts or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.02(A). In construing the CSPA, "court[s] shall give due consideration and great weight to federal trade commission orders, trade regulation rules and guides, and the federal courts' interpretations of subsection 45 (a)(1) of the "Federal Trade Commission Act," 38 Stat. 717 (1914), 15 U.S.C.A. 41, as amended." R.C. 1345.02(C).

147.     Plaintiff and Class Members are within the class of persons the CSPA was intended to protect.

148.     The harm that occurred as a result of the Data Breach is the type of harm the FTC Act and CSPA were intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

149.     As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and members Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest,

30

and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information of its current and former employees and customers in its continued possession; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and members of the Class.

150.    Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and members of the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in their continued possession.

**THIRD COUNT**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

151.    Plaintiff repeats and re-alleges each and every allegation contained in the Complaint as if fully set forth herein.

152.    In light of the special relationship between Defendant and Plaintiff and Class Members, whereby Defendant became guardians of Plaintiff's and Subclass Members' Private Information, Defendant became a fiduciary by its undertaking and guardianship of the Private Information, to act primarily for the benefit of its customers, including Plaintiff and Subclass Members, as follows: (1) for the safeguarding of Plaintiff's and Subclass Members' Private Information; (2) to timely notify Plaintiff and Subclass Members of a data breach and disclosure;

31

and (3) to maintain complete and accurate records of what customer information (and where) Defendant did and does store.

153.    Defendant had a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of this relationship, in particular, to keep secure the Private Information of its customers.

154.    Defendant breached its fiduciary duties to Plaintiff and Subclass Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period of time.

155.    Defendant breached its fiduciary duties to Plaintiff and Subclass Members by failing to encrypt and otherwise protect the integrity of the systems containing Plaintiff and Class Members' Private Information.

156.    Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to timely notify and/or warn Plaintiff and Subclass Members of the Data Breach.

157.    Defendant breached its fiduciary duties to Plaintiff and Class Members by otherwise failing to safeguard Plaintiff and Class Members' Private Information.

158.    As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Subclass Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their

32

Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession; (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiff and Subclass Members; and (vii) the diminished value of Defendant's services they received.

159.    As a direct and proximate result of Defendant's breaching its fiduciary duties, Plaintiff and Subclass Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

**FOURTH COUNT**
**Intrusion Upon Seclusion/Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

160.    Plaintiff repeats and re-alleges each and every allegation contained in the Complaint as if fully set forth herein.

161.    Plaintiff and Class Members have a reasonable expectation of privacy in their Private Information.

162.    Defendant's negligent, reckless, and intentional conduct as alleged herein invaded Plaintiff and Class Members' privacy.

163.    By knowingly failing to keep Plaintiff's and Class Members' Private Information safe, and by knowingly misusing said information, Defendant negligently, recklessly, and intentionally invaded Plaintiff's and Class Members' privacy by Intruding into Plaintiff's and Class Members' private affairs, without approval, in a manner that would be highly offensive and objectionable to a person of ordinary sensibilities.

33

164. Defendant knew that an ordinary person in Plaintiff's or a Class Member's position would consider Defendant's negligent, reckless, and intentional actions highly offensive and objectionable.

165. Such an intrusion into Plaintiff's and Class Members private affairs is likely to cause outrage, shame, and mental suffering because the Private Information disclosed includes sensitive personal information like Social Security Numbers that allow third parties to commit fraud and identity theft.

166. Defendant invaded Plaintiff and Class Members' right to privacy and intruded into Plaintiff's and Class Members' private life by negligently, recklessly, and intentionally misusing their Private Information without their informed, voluntary, affirmative, and clear consent.

167. Defendant intentionally concealed from Plaintiff and Class Members an incident that misused their Private information without their informed, voluntary, affirmative, and clear consent.

168. As a proximate result of such intentional misuse, Plaintiff's and Class Members' reasonable expectations of privacy in their Private Information was unduly frustrated and thwarted. Defendant's conduct, amounting to a substantial and serious invasion of Plaintiff's and Class Members' protected privacy interests causing anguish and suffering such that a person with ordinary sensibilities would consider Defendant's intentional actions or inaction highly offensive and objectionable.

169. In failing to protect Plaintiff's and Class Members' Private Information, and in negligently, recklessly, and intentionally misusing their Private Information, Defendant acted with intentional malice and oppression and in conscious disregard of Plaintiff's and Class Members'

34

rights to have such information kept secure, confidential, and private. Plaintiff, therefore, seeks an award of damages on behalf of himself and the Class.

**FIFTH COUNT**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

170.    Plaintiff repeats and re-alleges each and every allegation contained in the Complaint as if fully set forth herein.

171.    When Plaintiff and Class Members provided their Private Information to Cinfed in exchange for Defendant's services and/or as part of the employment relationship, they entered into implied contracts with Defendant pursuant to which Defendant agreed to reasonably protect such information. This duty was separate from that conferred by statute or common law.

172.    Defendant solicited and invited Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

173.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

174.    Customers who paid money to Defendant reasonably believed and expected that Defendant would use part of those funds to obtain adequate data security. Similarly, employees who gave their Private Information as a condition of the employment relationship, expected Defendant to act reasonably to keep its employees' Private Information safe. Defendant failed to do so.

175.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their

information reasonably secure. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

176.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

177.    Defendant breached its implied contracts with Class Members by failing to safeguard and protect their Private Information.

178.    As a direct and proximate result of Defendant's breaches of the implied contracts, Class Members sustained damages as alleged herein.

179.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

180.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

### SIXTH COUNT
**Unjust Enrichment**
**(On Behalf of Plaintiff and Class Members)**

199.    Plaintiff repeats and re-alleges each and every allegation contained in the Complaint as if fully set forth herein.

200.    This count is plead in the alternative to Count 5 (breach of implied contract).

201.    Plaintiff and Class Members conferred a monetary benefit on Defendant, by paying Defendant money for financial services, a portion of which was to have been used for data security

measures to secure Plaintiff's and Subclass Members' Private Information, and by providing Defendant with their valuable Private Information.

202.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Subclass Members' Private Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid their data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

203.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Subclass Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

204.    Defendant acquired the monetary benefit and Private Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

205.    If Plaintiff and Subclass Members knew that Defendant had not secured their Private Information, they would not have agreed to provide their Private Information to Defendant.

206.    Plaintiff and Class Members have no adequate remedy at law.

207.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost

37

opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect Private Information in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

208.    As a direct and proximate result of Defendant's conduct, Plaintiff and Subclass Members have suffered and will continue to suffer other forms of injury and/or harm.

209.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Subclass Members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Subclass Members overpaid for Defendant's services.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

a)  For an Order certifying this action as a class action and appointing Plaintiff as Class Representative and his counsel as Class Counsel;

b)  For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

38

c) For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

d) For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

e) Ordering Defendant to pay for not less than three years of credit monitoring services for Plaintiff and the Class;

f) For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g) For an award of punitive damages, as allowable by law;

h) For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

i) Pre- and post-judgment interest on any amounts awarded; and

j) Such other and further relief as this court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: November 22, 2023         Respectfully Submitted,

*/s/ Joseph M. Lyon*
Joseph M. Lyon (0076050)
Kevin M. Cox (0099584)
**THE LYON FIRM**
2754 Erie Avenue
Cincinnati, OH 45208
Phone: (513) 381-2333
Fax: (513) 766-9011
*jlyon@thelyonfirm.com*
*kcox@thelyonfirm.com*

39

*Attorneys for Plaintiff and the Proposed Class*